UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EVELYN PRIETO,

      Plaintiff,

v.                          Case No:   2:13-cv-489-FtM-38CM

COLLIER COUNTY, a political
subdivision of the State of Florida,
COLLIER COUNTY BOARD OF
COUNTY COMMISSIONERS and
IAN MITCHELL,

      Defendants.

_____/

## ORDER[1]

This matter comes before the Court on Defendants Collier County, Collier County Board of County Commissioners, and Ian Mitchell's Case-Dispositive Motion for Summary Judgment (Doc. #39) filed on July 1, 2014.  Plaintiff Evelyn Prieto filed a Response in Opposition to Defendants' Case-Dispositive Motion for Summary Judgment (Doc. #43) on July 25, 2014.  Thus, this matter is ripe for review.

## BACKGROUND

### A.  Plaintiff's employment as an executive aide

Defendant Collier County Board of County Commissioners ("Defendant Board") is a local legislative body comprised of five elected commissioners.  Each commissioner is

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

assigned an executive aide, who is an at-will employee.   Defendant Collier County ("Defendant County") hired Plaintiff to be the executive aide to then-Commissioner Brian Coletta on or about May 8, 2009.  (Doc. #1 at ¶ 11).  She provided secretarial support to Commissioner Colleta and served as a liaison between him and the other Board members, Collier County staff, and the public.  (Pl.'s Dep. 13:17-20; Doc. #43-2 at 53). For disputed reasons, Plaintiff was removed as Commissioner Coletta's executive aide and reassigned to Commissioner Tom Henning in December 2010.  (Doc. #1 at 12; Pl.'s Dep. 14:8-15:4; Mitchell Dep. 11:2-13:22).  Her job responsibilities did not change under Commissioner Henning.    (Pl.'s Dep. 20:9-15).    Plaintiff remained Commissioner Henning's executive aide until her discharge on October 4, 2012.  (Doc. #1 at ¶ 17).

During all relevant times, Defendant Ian Mitchell was the Executive Manager to the Board of County Commissioners and Plaintiff's supervisor.  (Doc. #1 at ¶ 12; Doc. #39 at 17; Doc. #43-2 at 41).  As Executive Manager, Defendant Mitchell managed the day-to-day business of the Board of County Commissioners' Office ("Board Office") and managed the executive aides.  (Doc. #43-2 at 41, 50; Doc. #39 at 44).  Pertinent here, Defendant Mitchell could hire, discipline, and fire the executive aides in consultation with the assigned commissioner.  (Doc. #43-2 at 42).  Defendant Mitchell voluntarily resigned as Executive Manager in September 2012, which became effective on or about October 31, 2012.  (Mitchell Dep. 104:5-105:6).

## B.  Plaintiff's performance issues

According to Defendants, 2012 marked a breakdown in Plaintiff's judgment, job performance, and behavior in the workplace.  (Doc. #39 at 4, 6; Mitchell Dep. 21:8-15, 29:1-19).  Case in point, Plaintiff opened a letter from Mayor John F. Sorey III that was

addressed to three commissioners – none of whom were Commissioner Henning. (Mitchell Dep. at 22:2-23:20, 99:4-22). She copied the letter and gave it to Commissioner Henning, who used the letter at the following Board meeting. (Id. at 23:11-14). Other incidents Defendants have noted include Plaintiff allegedly (1) interrupting a meeting between Defendant Mitchell and Commissioner Henning in or around July 2012 and demanding to be included in their conversation (Id. at 75:22-76:16); (2) eavesdropping on a telephone conversation between another executive aide and her assigned commissioner (Id. at 88:1-21); and (3) leaving work early without Defendant Mitchell's permission (Id. at 17:16-23). Defendant Mitchell, however, did not formally disciplined her for any of these alleged incidents. (Id. at 17:22-18:1, 99:15-23).

The general work environment for the executive aides soured in mid-2012 to the point that Defendant County's Human Resources Department ("HR") intervened. (Doc. #39 at 47-48). Kenneth Mayo from HR interviewed each executive aide between August 16, 2012, and September 5, 2012, to ascertain information on the situation. (Doc. #39 at 48-69). The interviews were recorded and transcribed. (Doc. #39 at 49-69). The four other executive aides each expressed deep concern regarding Plaintiff's job performance and behavior. (Doc. #39 at 48).

### C. Plaintiff's political support for Commissioners Henning and Nance

Elections for Collier County Board of Commissioners occurred in 2012, with the Republican primary elections taking place on August 14, 2012. Pertinent to this action, Commissioner Henning won the primary election for Collier County District 3, and Tim Nance upset incumbent Commissioner Coletta for Collier County District 5. On election night, Plaintiff and her daughter attended a celebration in honor of Commissioner

3

Henning.  (Doc. #1 at ¶ 13; Doc. #39 at 2).  During this event, someone photographed Plaintiff and her daughter.  (Doc. #1 at ¶ 13).  In the photograph, Plaintiff wore a t-shirt supporting Commissioner Henning and Plaintiff's daughter wore a t-shirt supporting Tim Nance.  (Id.).  Shortly thereafter, someone – not Plaintiff – posted the photograph on Commissioner Henning's Facebook campaign page.  (Pl.'s Dep. 45:12-17, 46:4-6, 47:24-48:12).

On August 15, 2012, Paula Springs, then-Commissioner Coletta's executive aide, showed Defendant Mitchell the Facebook photograph of Plaintiff and her daughter. (Springs' Dep. 40:17-41:16).  Ms. Springs testified she was "very hurt" by the photograph because Commissioner Coletta's loss placed her job in jeopardy.  (Springs' Dep. 41:3-16; Mitchell Dep. 27:4-21).  Defendant Mitchell placed the photograph in a file where he compiled information on each executive aide.  (Mitchell Dep. 28:19-25; 67:19-68:20).

### D.  Plaintiff's discharge and ensuing lawsuit

On October 4, 2012, Defendant Mitchell discharged Plaintiff, citing a pattern of unacceptable job performance, unprofessional conduct, and insubordination as grounds. (Doc. #39 at 42).  Prior to the discharge, Defendant Mitchell received Commissioner Henning's consent, as was required under his employment agreement.  (Doc. #39 at 17-18, 44-45; Mitchell Dep., 50:20-51:24, 75:19-21, 103:2-3, 132:16-24).

On July 3, 2013, Plaintiff commenced this action against Defendants, alleging (1) Defendants Collier County and Collier County Board of County Commissioners unlawfully retaliated against her for exercising her First Amendment right of free speech in violation of 42 U.S.C. § 1983; and (2) Defendant Mitchell tortuously interfered with her employment relationship with Defendant Board.  (Doc. #39 at 1; Doc. #43 at 3).  Defendants have

moved for summary judgment, arguing that each of Plaintiff's claims fail as a matter of law.  (Doc. #39).

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and [she] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Similarly, an issue of fact is material if it may affect the outcome of the suit under governing law.  Id.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In deciding whether the moving party has met this initial burden, courts must review the record and draw all reasonable inferences from the record in a light most favorable to the non-moving party.  See Whatley v. CNA Ins. Co., 189 F.3d 1310, 1313 (11th Cir. 1999).  Once the court determines the moving party has met this burden, the burden shifts to the non-moving party to present facts showing a genuine issue of fact exists to preclude summary judgment.  See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial."  Demyan v. Sun Life Assurance Co. of Can., 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991)).  Failure to show sufficient evidence of any essential element is fatal to the claim and the court should grant the summary judgment.  See Celotex, 477 U.S. at 322-23.  Conversely, if reasonable minds could find a genuine

issue of material fact then summary judgment should be denied.  See Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1532 (11th Cir. 1992).  With this standard in mind, the Court will address Defendants arguments below.

## DISCUSSION

### A. First Amendment retaliation claim

For the following reasons, the Court denies Defendants' Motion for Summary Judgment (Doc. #39) as it relates to Plaintiff's First Amendment claim that Defendants County and Board discharged her in retaliation for supporting Commissioners Henning and Nance in their primary elections on August 14, 2012.

Public employees, like Plaintiff, may bring First Amendment retaliation claims pursuant to 42 U.S.C. § 1983.  See Randall v. Scott, 610 F.3d 701, 703 (11th Cir. 2010). Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must show that (1) a defendant deprived her of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law.  See Arrington v. Cobb Cnty, 19 F.3d 857, 872 (11th Cir. 1998).

The constitutional right at issue in this case is Plaintiff's First Amendment right of free speech.  A "public employee's right to freedom of speech is not absolute."  Rankin v. McPherson, 483 U.S. 378 (1987).  "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services."  Lane v. Franks, 134 S. Ct. 2369, 2377 (2014) (citation omitted).  But, "public employees do not renounce their

citizenship when they accept employment, and th[e Supreme] Court has cautioned time and again that public employers may not condition employment on the relinquishment of constitutional rights."  Lane, 134 S. Ct. at 2377 (citations omitted); see also Connick v. Myers, 461 U.S. 138 (1983); Pickering v. Bd. of Edu., 391 U.S. 563 (1968).

The law is well settled that a public employee may not be discharged in retaliation for speech protected under the First Amendment.  See Rankin, 483 U.S. at 383.  To prevail on a First Amendment retaliation claim, the complaining plaintiff must establish (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in speaking as a citizen outweighed the government's interests as an employer; and (4) the speech played a substantial or motivating role in the adverse employment action.  See Vila v. Padron, 484 F.3d 1334, 1339 (11th Cir. 2007) (citing Akins v. Fulton Cnty., 420 F.3d 1293, 1303 (11th Cir. 2005)); see also Lane, 134 S. Ct. at 2377.  "If the plaintiff establishes these elements, the burden shifts to the defendant to prove that it would have made the same adverse employment decision absent the employee's speech."[2] Vila, 484 F.3d at 1339 (citing Akins, 420 F.3d at 1303).  Here, the parties do not dispute the first and third elements of Plaintiff's *prima facie* case.  Rather, they square off over whether (1) Plaintiff's speech involved a matter of public concern; (2) her speech was a motivating factor in Defendant Mitchell's decision to discharge her; and (3) Defendants would have discharged her in the absence of her speech.  The Court will address each matter in turn.

---

[2] The Pickering-Connick test is used for cases that involve an employee's right of expression; another analysis is appropriate for "raw political patronage" cases where employees are discharge *en masse*.  See Terry v. Cook, 866 F.2d 373, 375-77 (11th Cir. 1989); Stough v. Gallagher, 967 F.2d 1523, 1527 (11th Cir. 1992) (noting that cases involving the "overt expression of ideas" or political speech require the Pickering analysis).  Here, Plaintiff does not allege a political patronage claim.

1.  Speech on a matter of public concern

To determine if a public employee's speech has constitutional protection, the plaintiff must demonstrate, as a threshold, she "spoke as a citizen on a matter of public concern." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006); see also Boyce v. Andrew, 510 F.3d 1333, 1342 (11th Cir. 2007).  "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." Garcetti, 547 U.S. at 419 (citation omitted).

Speech relates to a matter of public concern when it can "be fairly considered as related to any matter of political, social, or other concern to the community[.]" Connick, 461 U.S. at 146.  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement." Connick, 461 U.S. at 147-48.  "Political speech addressing public issues or candidates running for public office invariably address matters of public concern because it is 'the unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" Stough v. Gallagher, 967 F.2d 1523, 1527 (11th Cir. 1992) (citations omitted).

Under these principles, there can be no legitimate debate that Plaintiff's political support for Commissioners Henning and Nance is a matter of public concern.  Plaintiff attended Commissioner Henning's election celebration during non-work hours, wore his campaign promotional t-shirt, and posed for a photograph that was later posted on Commissioner Henning's Facebook campaign page.  The main thrust of her speech concerned politics and candidates running for political office, which are matters at the core of speech the First Amendment protects.  See Vojvodich v. Lopez, 48 F.3d 879, 885

(5th Cir. 1995) (holding "associating with political organizations and campaigning for a political candidate" relate to a matter of public concern). Defendants have cited to no case law to find otherwise. The Court, therefore, concludes that Plaintiff's speech involved a matter of public concern.

    2.  <u>Substantial factor in discharge</u>

Next, to overcome summary judgment, Plaintiff must show a genuine issue of fact exists as to whether her protected speech was a motivating factor in Defendant Mitchell's decision to discharge her. See Gattis v. Brice, 136 F.3d 724, 726 (11th Cir. 1998). In deciding whether she has met this burden, the Court will examine the record as a whole while keeping in mind her burden "is not a heavy one." Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1291 (11th Cir. 2000) (citations omitted); see also Kamensky v. Dean, 148 F. App'x 878, 881 (11th Cir. 2005) (citation omitted). In determining whether a plaintiff's speech was a motivating cause, courts consider several factors:

> (1) the temporal proximity between the termination and the protected activity; (2) whether any reasons for the termination were pretextual; (3) whether any comments made, or actions taken, by the employer indicate the discharge was related to the protected speech; (4) whether the asserted reason for the discharge varied; and (5) any circumstantial evidence of causation, including such facts as who initiated any internal investigations or termination proceedings, whether there is evidence of management hostility to the speech in question, or whether the employer had a motive to retaliate. There is no one factor that is outcome determinative, but all factors must be taken into account.

Kamensky, 148 F. App'x at 881 (internal citation and quotation marks omitted); see also Beckwith v. City of Daytona Beach Shores, Fla., 58 F.3d 1554, 1564 (11th Cir. 1995).

Here, Defendants have not shown an absence of genuine issues of material fact. See Celotex, 477 U.S. at 323. Less than two months lapsed between Plaintiff's speech

(August 14, 2012) and her discharge (October 4, 2012).  See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 745 (11th Cir. 1996) (stating "[w]here termination closely follows protected activity, it is usually reasonable to infer that the activity was the cause of the adverse employment decision"); see also Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004) (holding, in a disability discrimination action, that a three-month period alone "does not allow a reasonable inference of a causal relation between the protected expression and the adverse action").  During this two-month period, there is no evidence or testimony that Plaintiff had any other job performance or behavioral issues to warrant her discharge.  In fact, the record is devoid of a clear explanation for why Defendant Mitchell waited approximately fifty-five days after the election to discharge Plaintiff.  Taken together, a reasonable jury could find that Plaintiff's political expression was a motivating factor in her discharge.

Additionally, Defendants' attempt to defeat the causation element by arguing that Defendant Mitchell had decided to discharge Plaintiff one month before the primary election because of performance and behavior issue lacks persuasive force.   As of August 16, 2014, when Kenneth Mayo of HR was interviewing the executive aides about their troubled work environment, Defendant Mitchell had not informed Mayo of his decision to discharge Plaintiff.  (Mayo Dep. 34:25-36:10).  Defendant Mitchell also did not inform Mayo about Plaintiff's alleged insubordination.  (Mayo Dep. 56:4-8).

Moreover, the Court faces a record riddled with conflicting testimony and evidence that it cannot resolve at the summary judgment stage.  See Morrison v. Amway Corp., 323 F.3d 920, 924 (11th Cir. 2003); Mize, 93 F.3d at 742 ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's

evidence is to be accepted for purposes of summary judgment." (citations omitted)).  For instance, Plaintiff argues Defendant Mitchell opposed Commissioners Henning's and Nance's elections on August 15, 2012, and thus he discharged her for celebrating their victories.  (Doc. #39 at 11).  Defendants counter that her argument is speculative and unsupported by the record.  Defendants do so, however, in the face of Defendant Mitchell having testified that he was unhappy that Jim Coletta had lost the election and that Commissioner Henning had won.  (Mitchell Dep. 106:3-22).  Although Defendant Mitchell expanded on this testimony, only a jury can make the necessary credibility determinations to settle this "he said, she said" dispute.   In another example, Commissioner Henning's affidavit attached to Defendants' Motion for Summary Judgment states that he consented to Defendant Mitchell's request to discharge Plaintiff.  (Doc. #39 at 45).  But, his statement is at odds with an earlier statement he made at a public hearing three weeks after Plaintiff's discharge.  In discussing Defendant Mitchell's decision to discharge Plaintiff, Commissioner Henning commented that Plaintiff "did an okay job," that he "didn't want to see her . . .  go on [his behalf]," and that there was no reason to terminate her on his behalf.  (Doc. #43-5 at 57).  At the same public meeting, Commissioner Georgia Hiller stated that she had reviewed Plaintiff's personnel file and found no evidence to support her discharge.  (Doc. #43-5 at 50; Hiller Dep. 44:24-45:6).

Based on the foregoing, Plaintiff has presented sufficient evidence to create a jury question regarding whether her support for Commissioners Henning and Nance was a motivating factor in her discharge.

3.  Legitimate, non-discriminatory business reason

Since Plaintiff has satisfied the elements of a First Amendment retaliation claim, the burden shifts to Defendants to show, by a preponderance of the evidence, they would have discharged Plaintiff even in the absence of her speech.  "To fulfill this burden, a government employer must show that the legitimate reason would have motivated it to make the same employment decision." Stanley, 219 F.3d at 1293 (citation omitted). Here, Defendants claim that Mitchell dismissed Plaintiff because he had authority to do so, and the Facebook photograph of Plaintiff and her daughter at Commissioner Henning's election celebration played no role in his decision to discharge her. (Doc. #39 at 11).  These bare bone reasons lack persuasive force, especially in light of conflicting evidence and testimony surrounding Plaintiff's discharge throughout the record.  Viewing the evidence in the light most favorable to Plaintiff, the Court finds genuine issues of material fact surrounding Defendants' proffered legitimate reasons for discharging Plaintiff.

Accordingly, the Court denies Defendants' Motion for Summary Judgment (Doc. #39) as it relates to Plaintiff's First Amendment claim.

**B. Tortious interference with business relationship**

For the following reasons, the Court grants Defendants' Motion for Summary Judgment (Doc. #39) as it relates to Plaintiff's allegation that Defendant Mitchell tortuously interfered with her employment relationship as an executive aide.

To prevail on this claim under Florida law, a plaintiff must show "'(1) the existence of a business relationship under which the claimant has rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the

relationship; (4) by a third party; and (5) damage to the claimant caused by the interference.'" Derrig v. City of Marco Island, No. 2:12-cv-46, No. 2:12-cv-464, 2013 WL 3070849, at *4 (M.D. Fla. June 17, 2013) (quoting Rudnick v. Sears, Roebuck & Co., 358 F. Supp. 2d 1201, 1205 (S.D. Fla. 2005)).  As discussed below, Defendants' Motion turns on the fourth element.  (Doc. #39 at 12).

In Florida, a cause of action for tortious interference does not exist against an individual who is himself a party to the business relationship with which he allegedly interfered.  See Ethyl Corp. V. Balter, 386 So.2d 1220 (Fla 3rd DCA 1980).  "Generally, a supervisor cannot be held liable for terminating an employee because he is considered a party to the employment relationship, and only third parties can be held liable for interference with an employment relationship." Derrig, 2013 WL 3070849, at *4; see also Rudnick, 358 F. Supp. 2d at 1206.  There is, however, an exception to this principle: "when a terminating supervisor acts outside the scope of his employment 'solely with ulterior purposes' or not in the principal employer's best interest." Derrig, 2013 U.S. Dist. LEXIS 84752, at *12-13 (quoting Alexis v. Ventura, 66 So. 3d 986, 988 (Fla. 3d DCA 2011)); see also O.E. Smith's Sons, Inc. v. George, 545 So.2d 298, 299 (Fla. 1st DCA 1989) Sloan v. Sax, 505 So. 2d 526, 528 (Fla. 3d DCA 1987).

Since Defendant Mitchell was Plaintiff's supervisor at all relevant times and acted within the scope of his employment when he discharged Plaintiff, the tortious interference claim hinges on the exception.  Plaintiff, however, has not come forward with any evidence that Defendant Mitchell acted with a sole ulterior purpose detrimental to Defendants Board and County.  See generally, Rudnick, 358 F. Supp. 2d at 1206-07 (stating a supervisor is not liable for tortious interference unless he acted with ill will

towards the plaintiff, outside the scope of employment responsibilities and induced the employer to terminate a business relationship to the employer's detriment).   Even if Defendant Mitchell had "harbored some 'personal malice or ill-will towards [Plaintiff]'" for supporting Commissioners Henning's and Nance's elections, that is not enough to "transform this case into one for tortious interference."   Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ, Inc., 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009).   The Court, therefore, grants Defendants' Motion for Summary Judgment (Doc. #39) as it relates to Plaintiff's tortious interference claim against Defendant Mitchell.

Accordingly, it is now

**ORDERED:**

(1) Defendants Collier County, Collier County Board of County Commissioners, and Ian Mitchell's Case-Dispositive Motion for Summary Judgment (Doc. #39) is **GRANTED in part and DENIED in part**.   Defendants' Motion is **denied** as to Plaintiff's First Amendment retaliation claim (Count I), but **granted** as to the tortious interference claim (Count II).

(2) The Final Pretrial Conference currently set for Friday, October 3, 2014, at 9:30 a.m. before the undersigned is rescheduled for Thursday, **October 2, 2014**, at **9:30 a.m**. in Courtroom 5D.

**DONE** and **ORDERED** in Fort Myers, Florida this 24th day of September, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All parties of record

14